# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA

In re:

LILIA BELKOVA                                    Case No. 3:13-bk-07570-RCT

_____ Debtor     /                   Chapter 12

PNC BANK, N.A.

v.                                               Adv. Pro No. 3:20-ap-00136-RCT

LILIA BELKOVA

_____ Debtor/Defendant     /

## FOURTH AMENDED MOTION TO DISMISS

---

### NOTICE OF OPPORTUNITY TO
### OBJECT AND REQUEST FOR HEARING

If you object to the relief requested in this paper you must file a response with the Clerk of Court at 300 North Hogan Street, Suite 3-150, Jacksonville, FL 32202, within 14 days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.

---

LILIA BELKOVA, Debtor/Defendant, moves to dismiss this proceeding,

with prejudice, pursuant to Fed.R.Civ.P. 12(b)(6), made applicable herein by

operation of Fed.R.Bankr.P. 7012(b).

## PNC BANK, N.A. LACKS STANDING
## TO PURSUE VACATING OF DISCHARGE

1.      As admitted in the Complaint, at paragraph 6, Ms. Belkova commenced a

case under Chapter 7 in this Court in 2011[1].

2.      As admitted in the Complaint, at paragraph 7, PNC BANK, N.A. ("PNC")

participated in Ms. Belkova's 2011 Chapter 7 Case as a creditor therein.

3.      Also admitted in the Complaint, at paragraph 11, Ms. Belkova received a

discharge in the 2011 Chapter 7 Case[2], which included any *in personam*

obligations to PNC.

4.      In the captioned case, at Doc. 309, Ms. Belkova objected to the claim of

PNC based upon her discharge in the 2011 Chapter 7 Case. See PNC's

Exhibit F.

5.      PNC responded to Ms. Belkova's Objection at Doc. 317 in which PNC

admitted that its unsecured claim was previously discharged.  PNC's claim

in this case did not include any unsecured debt.  See PNC's Exhibit E.

6.      By Order of January 26, 2017, assigned Doc. 357, this Court confirmed that

---

[1] The prior case was assigned Case No. 3:11-bk-07333-JAF, and will be referred to as the "2011 Chapter 7 Case."

[2] Ms. Belkova requests judicial notice of the Discharge in Case No. 3:11-bk-07333-JAF, marked as an Exhibit 3 on Doc 338, and filed in the main case at Doc. 338-3, filed in support of Ms. Belkova's objection to the claim (No. 4) of PNC.

PNC did not hold an unsecured claim as of the commencement of the

captioned case.

7.    PNC's claim having been discharged 8 years before commencement of this

proceeding, PNC's claim was unaffected by the discharge in this case and

PNC lacks standing to seek revocation of the discharge in the captioned

case.

8.    PNC submits no authority for the proposition that vacating Ms. Belkova's

second discharge will reinstate its "crammed-down" mortgage.  Such an

assertion would be contrary to the provisions of the Code, which reinstate

avoided liens only when a case is dismissed.  11 U.S.C. § 349(b)(1)(C).

## PNC HAS FAILED TO SUFFICIENTLY ALLEGE FRAUD

9.    PNC has failed to sufficiently and with specificity allege fraud such that the

Complaint complies with the requirements of Fed.R.Civ.P. 9(b), made

applicable herein by operation of Fed.R.Bankr. P. 7009.

10.    None of the allegedly misleading statements identified by PNC are under

oath.

11.    In the complaint, PNC has not alleged with the required specificity that: Ms.

Belkova knew the allegedly fraudulent statement(s) was (were) false; or that

Ms. Belkova made the allegedly false statement(s) with fraudulent intent; or

that Ms. Belkova's statement related materially to the bankruptcy case.  In

fact, PNC's own exhibits decry the alleged change of position.  Specifically,

PNC's Exhibit V, at page 43, includes an excerpt from Ms. Belkova's

Schedules in this case, wherein Ms. Belkova swore under penalty or perjury

that her interest in the "Palm Beach County Five Acre Farm" was "As

Trustee of Florida Land Trust 072003 and some beneficial interest-jointly

with mother", such interest being valued at "approx. 200,000", and the

nature of the secured interest being, "unknown, contingent, disputed".

12.     Other than alleged reliance upon unspecified statements which have nothing

to do with the entry of the discharge,[3] the only "reliance" alleged by

Plaintiff is this Court's alleged reliance[4] upon statements of Ms. Belkova,

such reliance resulting in the issuance of discharge.  Without suggesting

why PNC's alleged reliance upon only select portions of the record was

reasonable, it is clear from the four corners of the Complaint that Ms.

Belkova had clearly defined her limited interest in the subject property, and

disclosed her mother's interest, under oath.  Ms. Belkova had also clearly

put PNC on notice that its alleged mortgage was disputed.  Nothing in the

---

[3] See paragraph 47 of the Complaint.

[4] See paragraph 48 of the Complaint.

4

record, within the Complaint, demonstrates a change of position of Ms.

Belkova related to her limited interest in the subject property, or elimination

of her mother's joint interest.

**PNC's ALLEGATIONS ARE INCONSISTENT WITH THE EXHIBITS**

13.    PNC relies upon alleged inconsistencies between positions Ms. Belkova

asserted in this case as against developments post-confirmation. There are

no contradictory representations in Ex U as between the main case.  The

allegations of paragraph 37 and Exhibit V, confirm that Ms. Belkova only

claimed an interest in the subject property as Trustee and some beneficial

interest jointly with her mother in the captioned case.  In that Ms. Belkova

did hold an equitable interest in the subject property, the Code authorized

Judge Funk to "cram-down" the mortgage[5], notwithstanding the Debtor's

lack of a fee simple interest in the property. The real property was not

---

[5]  11 U.S.C. §506 provides, in pertinent part,
    (a)(1)An allowed claim of a creditor secured by a lien on
    property in which the estate has an interest... is a secured
    claim to the extent of the value of such creditor's interest
    in the estate's interest in such property ... Such value
    shall be determined in light of the purpose of the
    valuation and of the proposed disposition or use of such
    property, and in conjunction with any hearing on such
    disposition or use or on a plan affecting such creditor's
    interest.

property of the estate as the Debtor held an interest as Trustee and joint beneficiary, the Debtor never asked the court to determine her interest in the subject property.  The Court did not have jurisdiction over the counterclaim due to vesting of all property upon confirmation. Ms. Belkova never misrepresented her ownership interest in the subject property. See PNC's Ex U and Ex. V (shows at p 15/43 (top paragraph), and p 43/43).

14. PNC mis-characterizes the identity of the movants, clearly apparent in PNC's Exhibit V, which was filed by Ms. Belkova's mother, and Ms. Belkova, not in her individual capacity, but rather as Trustee, post-confirmation.

15. While the allegations of the Complaint at paragraph 27 are literally correct, one must also note that the Order confirms the Sixth Amended Plan, which specifically provides that "The confirmation of this Plan shall have the effect of confirming that Debtor is the owner of this property located in Palm Beach County, Florida, either individually or through the respective Florida Land Trust."  As noted in PNC's Exhibit V, at page 43/43, Ms. Belkova never asserted that she held either a fee simple interest in the subject property, or that she was the sole beneficiary of the Florida Land Trust.

6

# MEMORANDUM OF LAW

## <u>PNC DID NOT HOLD A DISCHARGEABLE CLAIM IN THIS CASE</u>

"The term 'creditor' is clearly defined in the Bankruptcy Code as 'an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.' 11 U.S.C. § 101(10)(A)." *In re Maier*, 498 B.R. 340, 344 (Bankr. M.D. Fla. 2013)(citing for a different proposition, *Cadleway Props., Inc. v. Andrews (In re Andrews)*, 239 F.3d 708, 710 (5th Cir.2001)).

The effect of a discharge is defined in 11 U.S.C. §524, which provides, in pertinent part,

> (a)A discharge in a case under this title—
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727... of this title, whether or not discharge of such debt is waived;
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived...

PNC's claim was discharged in 2012, consequently PNC did not hold a dischargeable claim as of the commencement of the captioned case in 2013. Whether one refers to the discharge as "law of the case" (due to the Order sustaining Ms Belkova's objection to claim #4), res judicata, or estoppel by judgment (collateral estoppel), the effect of the prior discharge is the same, PNC

7

was not affected by the discharge in the captioned case.

"[T]he law-of-the-case doctrine only bars consideration of 'those legal issues that were actually, or by necessary implication, decided in the former proceeding.' *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1288 (11th Cir.2000)(internal quotation marks omitted)." *Newman v. Ormond*, 456 F. App'x 866, 867 (11th Cir. 2012).

> In this opinion, we use the term "claim preclusion," while the bankruptcy court, in its order, cited the "law of the case" as its basis for holding the Wallises' arguments to be barred. The district court, however, framed its opinion in terms of "res judicata." For the sake of clarity, we take this opportunity to define these often misused terms. Res judicata is frequently used to refer generically to the law of former adjudication. A former judgment can create two different types of bars to subsequent litigation, depending on whether the subsequent litigation arises from the same or a different cause of action. If the later litigation arises from the same cause of action, then the judgment bars litigation not only of "every matter which was actually offered and received to sustain the demand, but also [of] every [claim] which might have been presented." *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927). In this opinion, we refer to this strand of former adjudication as "claim preclusion." *See Jones v. Texas Tech Univ.*, 656 F.2d 1137, 1141 n. 1 (5th Cir. Unit A Sept. 1981). If, however, the subsequent litigation arises from a different cause of action, the prior judgment bars litigation only of "those matters or issues common to both actions which were either expressly or by necessary implication adjudicated in the first." **2 A. Freeman, A Treatise of the Law of Judgments** § 677, at 1429–30 (5th ed. 1925); *see Baltimore S.S.*, 274 U.S. at 319, 47 S.Ct. at 602. We refer to this strand of former adjudication as "issue preclusion." *See* **Restatement (Second) of Judgments** § 17 comment c (1982).

> Closely related to the doctrines of claim and issue preclusion is the doctrine of "law of the case." This is a rule of practice under which a rule of law enunciated by a federal court "not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but [also] establishes the law which other courts owing obedience to it must, and which it itself will, normally, apply to the same issues in subsequent proceedings in the same case." *Morrow v. Dillard*, 580 F.2 1284, 1289 (5th Cir.1978) (*quoting* 1**B J. Moore, Moore's Federal Practice** ¶ 0.404[1] (2d ed. 1974) (footnotes omitted)) (emphasis in original). While the law of the case does not bar litigation of issues "which might have been decided but were not," *id*. at 1290, it does require a court to follow what has been decided explicitly, as well as by necessary implication, in an earlier proceeding, *id*. The distinction between law of the case and claim preclusion is that the former bars relitigation of legal rules while the latter bars relitigation of claims (i.e., legal rules applied to the facts of the case). In addition, law of the case bars only those legal issues that were actually, or by necessary implication, decided in the former proceeding, while claim preclusion bars relitigation not only of claims raised but also claims that could have been raised. *Id*. Law of the case differs from issue preclusion in that the former applies only to proceedings within the same case, while the latter applies to proceedings in different cases.

*In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir. 1990).

"Under the bankruptcy code, three types of entities have standing to challenge a debtor's discharge: trustees, creditors, and United States trustees." *In re Andrews*, 239 F.3d 708, 710 (5th Cir. 2001)(footnotes omitted).

> "The question of standing involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. To satisfy the 'case or controversy' requirement of Article III, which is the irreducible constitutional minimum of standing, a plaintiff must, generally speaking, *demonstrate that he has suffered 'injury in*

9

*fact,' that the injury is 'fairly traceable' to the actions of the*
*defendant, and that the injury will likely be redressed by a favorable*
*decision.*" *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137
L.Ed.2d 281 (1997) (internal quotation marks and citations omitted).

*O'Halloran v. First Union Nat. Bank of Fla.*, 350 F.3d 1197, 1202 (11th Cir.

2003)(emphasis added).

### PNC HAS FAILED TO ALLEGE REQUIRED BASES FOR REVOCATION

> The Court will revoke a discharge "if the following
> criteria have been satisfied: (1) the debtor obtained the
> discharge through fraud; (2) the creditor possessed no
> knowledge of the debtor's fraud prior to the granting of
> the discharge; and (3) the fraud, if known, would have
> resulted in the denial of the discharge under 11 U.S.C. §
> 727(a)." *The Cadle Co. v. Parks–Matos (In re Matos)*,
> 267 Fed.Appx. 884, 887 (11th Cir.2008). Under §
> 727(a)(4)(A), the plaintiff must show "(1) the debtor
> made a statement under oath, (2) the statement was false,
> (3) the debtor knew the statement was false, (4) the
> debtor made the statement with fraudulent intent, and (5)
> the statement related materially to the bankruptcy case."
> *In re Paul*, 2012 WL 4894581, at *3 (*quoting Pioneer
> Credit Company v. Roubieu (In re Roubieu)*, 2005 WL
> 6459370, at *4 (Bankr.N.D.Ga.2005)). When a §
> 727(d)(1) claim is based on § 727(a)(4)(A), the elements
> partially merge, and a plaintiff states a claim under §
> 727(d)(1) if she states a claim under § 727(a)(4)(A) and
> alleges no knowledge of the fraud before the discharge.

*In re Smith*, 489 B.R. 875, 891 (Bankr. M.D. Ga. 2013).

The Court does not rely upon statements of a Debtor in determining whether

and when a discharge is issued.  The allegedly false statements of Ms. Belkova

were not "related materially to the bankruptcy case."

11 U.S.C. § 1328 provides, in pertinent part,

(a)Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan ... after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid ... the court shall grant the debtor a discharge of all debts provided for by the plan ...

Bankruptcy Rule 4004 provides, in pertinent part, "(c)(4) In ... chapter 13 case, the court shall not grant a discharge if the debtor has not filed any statement required by Rule 1007(b)(7)." It is the absence of required payments or filings, and not an analysis of a Debtor's statements which triggers the issuance of a discharge.

The statements or omissions allegedly constituting fraud on the part of Ms. Belkova had no effect upon administration of the captioned case. Indeed, the record is replete with reservations of rights to challenge the mortgage asserted by PNC. See Docs.: 18 at pgs. 2/32, 11/32; 45, p 3/3; and 383, p 2/4, para 5, last sentence. The record is also replete with references to Ms. Belkova's limited interest in the subject property. See Doc. 18, p. 2/32.

## PNC HAS NOT REQUESTED RELIEF UNDER RULE 60(B)

Only in paragraph 53 does PNC ask this Court to vacate the Valuation

11

Order, which became final and non-appealable in November of 2015, more than five years ago. PNC cites no authority in support of its request to be relieved of a 5-year old order.

Wherefore, Defendant requests entry of an order dismissing the Complaint, with prejudice, and for an award of her attorneys fees and costs pursuant to F.S. 57.105(7).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on February 1, 2021,via notice of electronic filing to Kimberly H. Israel, Esq, counsel for PNC, kisrael@mcglinchey.com

Respectfully submitted,

**FLORIDA BANKRUPTCY GROUP, LLC.**
Attorneys for Ms. Belkova
4121 N 31st Avenue
Hollywood, Fl 33021-2011
954-893-7670/954-252-2540 Fax


By: s/ Kevin C Gleason
Fla Bar No. 369500
BankruptcyLawyer@aol.com