**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

IN RE:                                                    **Case No. 3:13-bk-07570-JAF**

**LILIA BELKOVA,**                                        **Chapter 12**

      **Debtor.**

_____

**PNC BANK, N.A.,**                                       **Adv. Pro. No. 3:20-ap-00136-RCT**

      **Plaintiff,**

**vs.**

**LILIA BELKOVA,**

      **Defendant.**

_____

<u>**AMENDED COMPLAINT OF PNC BANK, N.A. FOR INJUNCTIVE RELIEF
OR, ALTERNATIVELY, TO REVOKE CHAPTER 12 DISCHARGE
AND TO REVOKE AND AMEND PRIOR ORDERS**</u>

      COMES NOW Plaintiff, PNC BANK, N.A. ("**<u>PNC</u>**"), by and through its undersigned

counsel, and pursuant to Rule 7001(4) of the Federal Rules of Bankruptcy Procedure (the

"**<u>Bankruptcy Rules</u>**"), and within the time prescribed by the Court's Order Granting in Part and

Denying in Part the Fourth Amended Motion to Dismiss entered previously in this adversary

proceeding [D.E. 35] (the "**<u>Order on Motion to Dismiss</u>**"), files this Amended Complaint (the

"**<u>Amended Complaint</u>**") for injunctive relief or, alternatively, to revoke the Chapter 12 discharge

granted previously to Debtor/Defendant, LILIA BELKOVA ("**<u>Belkova</u>**"), in the above-captioned

Chapter 12 bankruptcy case (the "**<u>Chapter 12 Bankruptcy</u>**"), to revoke the Valuation Order and

the Order Sustaining Objection to Claim Four (both defined below), and to amend the

Confirmation Order (as defined below). In support hereof, PNC alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      This adversary  proceeding concerns matters arising in the Chapter 12 Bankruptcy, a case under title 11 of the United States Code (the "**Bankruptcy Code**").  This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(a).

2.      As provided for in Rule 7008 of the Bankruptcy Rules, PNC consents to entry of final orders or judgment by the Bankruptcy Court.

3.      Belkova is the debtor in the Chapter 12 Bankruptcy.

4.      PNC is a secured creditor who holds a direct financial interest in the outcome of the Chapter 12 Bankruptcy. [D.E. 35].

5.      Venue for this adversary proceeding is proper in this district under 28 U.S.C. § 1409.

## PROCEDURAL HISTORY

6.      PNC is a secured creditor of Belkova by virtue of a mortgage (the "**Mortgage**") on certain real property owned by Belkova located at 2251 Buck Ridge Trail, Loxahatchee, Florida 33470 (the "**Property**").

7.      In a prior Chapter 7 case filed by Belkova in this District [Case No. 3:11-bk-07333] (the "**Chapter 7 Bankruptcy**"), PNC received relief from the automatic stay to pursue an *in rem* action against the Property.

8.      In November 2012, Belkova received a discharge in the Chapter 7 Bankruptcy, and her personal liability on the promissory note underlying the PNC mortgage lien was discharged. PNC retained its lien rights against the Property following Belkova's discharge in the Chapter 7 Bankruptcy.

9.      Belkova filed this Chapter 12 Bankruptcy less than a year after her discharge in the Chapter 7 Bankruptcy.

10.     Three orders were entered in the Chapter 12 Bankruptcy that affected Claim 4-1 filed by PNC in the case ("**Claim Four**").

11.     In October 2015, the Court entered its Amended Order Granting Motion for Relief from Order Granting Debtor's Amended Motion to Value Secured Claim Four (4) of PNC Bank, N.A. [D.E. 226] (the "**Valuation Order**").  The Valuation Order was an agreed order between Belkova and PNC, both of whom were represented by counsel at the time, and it established the secured portion of Claim Four at $325,000, plus interest, with the balance of PNC's claim treated as unsecured.

12.     Subsequently, in January 2017, the Court entered its Order Sustaining Debtor's Objection to Secured Claim Four (4) of PNC Bank [D.E. 357] (the "**Order Sustaining Objection to Claim Four**").  That Order provided that the unsecured portion of PNC's claim was disallowed and that no disbursement on that portion of Claim Four would be made under a confirmed plan. Notably, that Order also provided that "[n]otwithstanding the foregoing, the lien of PNC Bank on its collateral shall be avoided only upon completion of the Debtor's Chapter 12 Plan payments and discharge." *Id.*

13.     In May 2017, the Court confirmed the Debtor's Sixth Amended Chapter 12 Plan [D.E. 383] through its Order Confirming Chapter 12 Plan Allowing Claims and Directing Distribution [D.E. 393] (the "**Confirmation Order**").  With respect to Belkova's ownership of the Property, the Sixth Amended Chapter 12 Plan provided "[t]he confirmation of this Plan shall have the effect of confirming that Debtor is the owner of this property located in Palm Beach County, Florida either individually or through the respective Florida Land Trust." This statement is consistent with an earlier finding in the case by the Court that, "[b]ecause Debtor is the Trustee of the Land Trust, she has full rights of ownership over the Real Property and has standing to value the Real Property." [D.E. 215].

14. As to the treatment of PNC's claim in the Confirmation Order, Claim Four is listed twice in the Claim Notes section, which is attached as Exhibit A to the Confirmation Order and was incorporated into the Confirmation Order. The first entry lists a secured claim for PNC in the amount of $325,000.00, along with a note that references the Valuation Order. The second entry lists an unsecured claim for PNC in the amount of $433,510.40 to be paid at $0.00. That Claim Note specifically provides that "[t]he lien of PNC Bank shall be avoided only upon completion of payments and discharge."

15. In May 2018, Belkova filed an adversary proceeding against PNC to invalidate its mortgage lien on the Property. [Adv. No. 3:18-ap-00180-RCT]. PNC answered the Complaint and filed a Counterclaim to establish an equitable lien and/or to be subrogated to the rights of the previous mortgage holder if Belkova prevailed on her underlying claim. PNC then filed a Motion for Summary Judgment as to Belkova's claim and as to its own counterclaims for equitable lien and equitable subordination.

16. In March 2020, the Court granted summary judgment in favor of PNC on its counterclaims, which effectively mooted Belkova's claim to invalidate the mortgage lien. [Adv. Pro. No. 3:18-ap-00180-RCT, Docs. 125 & 126]. The Court also found that PNC has held enforceable lien rights from the time the PNC Mortgage and underlying promissory note were executed, and that these equitable rights permit PNC to seek foreclosure and judicial sale of the Property.

17. Belkova appealed the summary judgment Order and corresponding Judgment, which appeal remains pending in the District Court for the Middle District of Florida [Case No. 5:20-cv-00143-BJD] (the "**District Court Appeal**")

18.     Belkova completed her Chapter 12 Plan and, in June 2020, she received a discharge [D.E. 502] (the "**Discharge Order**").    The Discharge Order discharged approximately $430,000.00 of debt to PNC that was treated as unsecured.

19.     On July 24, 2020, Belkova (as trustee for the Land Trust that originally acquired the Property) (the "**Land Trust**") and Anisa Nazarova ("**Nazarova**"), who has been described by Belkova as her mother and a co-beneficiary of the Land Trust (the "**Movants**"), filed a Motion for Leave to Intervene and Memorandum of Law in the District Court Appeal [Case No. 5:20-cv-00143-BJD, Doc. 8] (the "**Motion to Intervene**").

20.     In the Motion to Intervene, the Movants claimed they had interests in the Property that were not represented in this Court, that the Property was not part of Belkova's Chapter 12 estate, and that this Court did not have jurisdiction over the Property.

21.     Movants also filed a Motion to Relinquish Jurisdiction for a Motion in the Court Below and Memorandum of Law [Case No. 5:20-cv-00143-BJD, Doc. 16] (the "**Motion to Relinquish Jurisdiction**") in the District Court Appeal, in which they asked the District Court to relinquish jurisdiction to this Court pursuant to Bankruptcy Rule 9024.

22.     On November 10, 2020, the District Court entered an Order that denied the Motion for Leave to Intervene and the Motion to Relinquish Jurisdiction. [Case No. 5:20-cv-00143-BJD, Doc. 23].  The Movants appealed that Order, which appeal is pending in the Eleventh Circuit. [11th Cir. Appeal Case No. 21-10117-DD] (the "**Eleventh Circuit Appeal**").

23.     PNC's original Complaint in this adversary proceeding was one count that sought to revoke the Discharge Order.  [D.E. 25].

24.     Belkova filed a Motion to Dismiss the Complaint [D.E. 23] (the "**Motion to Dismiss**").  The Motion to Dismiss argued that PNC lacked standing to pursue vacating the Discharge Order, and that PNC failed to sufficiently allege fraud.

25.    In the Order on Motion to Dismiss [D.E. 35], the Court held that PNC is a secured creditor with a direct financial interest in the outcome of the Chapter 12 Bankruptcy and that PNC is a party in interest who has standing to bring a Complaint to revoke the Discharge Order.

## DETAILED FACTUAL ALLEGATIONS

26.    PNC's Adversary Complaint [D.E. 1] sets forth in granular detail the salient events during the Chapter 7 Bankruptcy as well as this Chapter 12 Bankruptcy.  The records in those cases are described more fully below, are attached to the Complaint [D.E. 1, Exhibits A-W], and are incorporated herein by this reference.

### 1.    The Property and the Mortgage

27.    The Property is the subject of various litigation between Belkova and PNC since the automatic stay was lifted in Belkova's Chapter 7 Bankruptcy. Belkova admitted that, on the petition date of this Chapter 12 Bankruptcy, November 4, 2013, she "was the beneficial owner of the" Property through a series of transactions related to Land Trust Agreement No. 072003 (the "**Land Trust**"), into which the Property originally was transferred, to wit: (a) a transfer of the Property from James Sobocienski on February 9, 2004, to Joseph M. Hanratty, Trustee of the Land Trust, which was recorded in the Official Records of Palm Beach County, Florida at Book 16544, Page 499-500; (b) a transfer of the beneficial interest in the Land Trust on February 9, 2004, from James Sobocienski to Nazarova; and (c) the subsequent transfer *on the very same date* by Nazarova, by and through Belkova as her attorney in fact, to Belkova.[1]

28.    A mortgage was executed in favor of Mackinac Savings Bank by Joseph M. Hanratty, as Trustee of the Land Trust Agreement No. 072003 on February 9, 2004 (the

---

[1] Adv. Pro. Case No. 3:18-ap-0180-JAF at: (i) Adversary Complaint (D.E. 1), at ¶¶ 9-11; (ii) Defendant's Answer, Affirmative Defenses and Counterclaim to Adversary Complaint (D.E. 32), at pp. 6-7, ¶¶ 3-6; and (iii) Answer to Counterclaim (D.E. 42), at pp. 1-2, ¶¶ 3-6.

"**Mackinac Mortgage**").  The Mackinac Mortgage, in the amount of $123,750.00, was recorded on February 12, 2004, in the Official Records of Palm Beach County, Florida at Book 16544, Page 0501, and encumbered the Property.

29.     In connection with the Mackinac Mortgage, Joseph M. Hanratty, as Trustee of the Land Trust, executed a Trustee's Affidavit on that same date, in which he attested he "is the Trustee possessing full power without limitation to convey or mortgage property and to execute all documents necessary to any such transaction." That Trustee's Affidavit was recorded in the Official Records of Palm Beach County, Florida at Book 16544, Page 0513.

30.     On or about January 14, 2005, Joseph M. Hanratty, as Trustee of the Land Trust, executed the Mortgage encumbering the Property in favor of Fidelity Federal Bank & Trust.  The Mortgage was recorded on January 27, 2005, in the Official Records of Palm Beach County, Florida at Book 18066, Pages 0221-0237.[2]  On February 10, 2005, a Satisfaction of the Mackinac Mortgage was recorded in the Official Records of Palm Beach County, Florida at Book 18126, Page 0846.

### 2.     **The Chapter 7 Bankruptcy**

31.     On October 6, 2011, Belkova filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, Case Number 3:11-bk-07333-JAF, commencing the Chapter 7 Bankruptcy.  On Schedule F filed in that case, she listed PNC as a creditor, and described the claim as "approx. 2005 alleged construction loan/contract cosigner," with the Amount of Claim sworn to as "$650,000 or Less".  The Schedules were filled out by hand and signed by Belkova under penalty of perjury.

---

[2] In her Adversary Complaint in Adv. Pro. Case No. 3:18-ap-0180, which was filed on December 14, 2018, Belkova acknowledged the existence and recording of the Mortgage but characterized it as "purporting to encumber the Property…." *Id.,* Adversary Complaint (D.E. 1), at ¶ 12.

32.     On January 11, 2012, PNC filed its Motion for Relief from the Automatic Stay in the Chapter 7 Bankruptcy, in which it alleged that, as successor by merger to National City Bank as successor by merger to Fidelity Federal Bank & Trust, it held a security interest in the Property by virtue of the Mortgage and a Note attached and attested to by an Affidavit executed by an authorized representative of PNC.

33.     This Court issued an Order Granting Relief from the Automatic Stay on February 3, 2012, with no objection to the Motion for Relief having been filed by Belkova.  That Order lifted the automatic stay imposed by § 362(a), and authorized PNC to "proceed with the foreclosure of its lien" on the Property.  The Order further authorized PNC "to obtain an *in rem* judgment against the property".

34.     On November 15, 2012, this Court entered its Discharge of Debtor, discharging Belkova of her legal obligation to PNC under the Note (the "**Chapter 7 Discharge Order").**  The Chapter 7 Discharge Order plainly stated, however, that "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case." PNC already had been granted relief from stay to proceed with the foreclosure of its lien at the time of the Chapter 7 Discharge Order.

**3.     The Chapter 12 Bankruptcy**

35.     Less than one year later, on November 4, 2013, Belkova commenced the Chapter 12 Bankruptcy.  Her schedules, filed on December 13, 2013, listed the Property by description in her own handwriting on Schedule A, and described the nature of her interest in the Property "[a]s Trustee of Florida Land Trust 072003 and some beneficial interest – jointly with mother."[3]

---

[3] Chapter 12 Bankruptcy, D.E. 18 at p. 2 of 32.

Belkova identified her mother as Nazarova.

36.    Further, despite the Court's prior recognition of PNC's lien in its Order Granting Relief from the Automatic Stay in the Chapter 7 Bankruptcy, Belkova did not list PNC as a creditor holding a secured claim in her Schedule D.  Instead, she listed PNC as an unsecured creditor on Schedule F.  She described PNC's claim as "partial payment of construction claims to have a mortgage on West Palm Beach Farm – breached construction loan agreement, no valid lien – disputed." She also noted, however, that PNC's claim of $514,000 was discharged in the Chapter 7 Bankruptcy.[4]

37.    On March 13, 2014, PNC filed Claim Four in the Chapter 12 Bankruptcy.  Attached to the Proof of Claim were copies of the Note and Mortgage – the same Mortgage attached as Exhibit "E" to Belkova's Adversary Complaint in Case No. 3:18-ap-180.  On May 21, 2014, PNC Mortgage, as servicer for PNC, filed its Amended Objection to Confirmation of Chapter 12 Plan, in which the Note and Mortgage were once again attached as exhibits, and PNC asserted that it held a first mortgage on the Property.

### a.    The Valuation Order

38.    On June 25, 2014, Belkova filed her Motion to Value Secured Claim Four (4) of PNC Bank, N.A.  In the body of that motion, she admitted that the loan to PNC "*is secured by a lien* on a farm located at 2251 Buckridge Trail, Loxahatchee, FL 33470."[5]  The motion sought the entry of an order "valuing the *secured claim* of [PNC] in the amount of $200,000" among other payment terms.[6]

39.    In addition, in support of her Motion to Value Secured Claim Four (4) of PNC

---

[4] *Id.*, D.E. 18 at p. 11 of 32.
[5] *Id.*, D.E. 45 at ¶ 2 (emphasis added).
[6] *Id.* at ¶ 5 (emphasis added).

Bank, N.A., Belkova filed a sworn Affidavit of Valuation, in which she attested: "The name of the *lienholder* is PNC Bank" and "The type of property is real property and the description of the property is Debtor's farm located in Palm Beach County, FL."[7]  Belkova went on to challenge the amount owed on the "first mortgage" to PNC Bank, but did not challenge the Mortgage or the lien itself and did not assert that the Property was not property of the estate.  In fact, in her own words, she described it as a first mortgage.[8]

40.    On August 15, 2014, this Court entered its Order Granting Debtor's Amended Motion to Value Secured Claim Four (4) of PNC Bank, N.A., holding that the portion of Claim Four secured by the Property was valued at $200,000.  The Property was identified in the Order as 2251 Buck Ridge Trail, Loxahatchee, FL 33470.[9]

41.    On September 29, 2014, PNC filed its Motion for Relief from Order Granting Debtor's Amended Motion to Value Secured Claim Four (4) of PNC Bank, N.A., and a final evidentiary hearing (FEH) ultimately was set on PNC's motion on August 12, 2015.[10]

42.    On August 7, 2015, Belkova filed Debtor's Response in Opposition to Motion for Relief from Order Granting Debtor's Amended Motion to Value Secured Claim Four (4) of PNC Bank, N.A., admitting she had relied on the Court's Order valuing the Property and that she had completed "upgrades and repairs in reliance on the value of the property as determined by this Court."[11]  She did not argue or allege that she did not own the Property, that PNC did not have a lien against the Property, or that the Court could not administer the Property as property of the estate.  Instead, she opposed PNC's motion on the alleged prejudice that would befall her if the

---

[7] *Id.*, at p. 3 of 3, ¶¶ 2-3 (emphasis added).
[8] Belkova filed an Amended Motion to Value Secured Claim Four (4) of PNC Bank, N.A., which was filed solely to correct the Certificate of Service. *Id.*, D.E. 52.
[9] *Id.*, D.E. 64.
[10] *Id.*, D.E. 80 and 146.
[11] *Id.*, D.E. 198 at p. 6, ¶ 25.

Order were vacated and the value of the Property undone because she had made substantial improvements to the Property.

43.      The Hearing Proceeding Memo for the FEH on PNC's motion entered on August 12, 2015, reflects that the parties announced in open court that the motion had settled.[12]  That settlement later was reflected in the Valuation Order.[13]  In the Valuation Order, the Court held: "The portion of claim Four (4) secured by the following real property is valued at $325,000."  The real property was described as 2251 Buck Ridge Trail, Loxahatchee, FL 33470.  The Valuation Order went on to hold, "The balance of this claim shall be treated as unsecured." The settlement was subsequently reflected in the Confirmation Order.

### b.      The Order Sustaining Objection to Claim Four

44.      On September 14, 2016, Belkova filed Debtor's Objection to Secured Claim Four (4) of PNC Bank, N.A., in which Belkova stated that she had obtained a discharge of her personal liability under the Mortgage and Note in the Chapter 7 Bankruptcy.  In so doing, she admitted to having signed the Note in order to claim the benefit of the discharge therefrom.  She also stated that "the lien on the property in question survived the previous Chapter 7".[14]  Belkova also filed an Affidavit in Support of Objection to Claim,[15] in which she stated under oath that PNC's claim, and those of two other lienholders, were "liens on the properties in question [that] survived the previous Chapter 7 Discharge".

45.      PNC filed a response to Belkova's objection to its secured claim[16] and engaged in discussions with her, through counsel, to resolve the issue of disallowance of the unsecured portion

---

[12] *Id.,* D.E. 211.
[13] *Id.,* D.E. 226.
[14] *Id.*, D.E. 309.
[15] *Id.*
[16] *Id.*, D.E. 317

of Claim Four.

46.     In January 2017, the Court entered the Order Sustaining Debtor's Objection to Secured Claim Four, which was agreed to by Belkova and PNC.  The Order provided that the unsecured portion of Claim Four was disallowed and that no disbursement on that portion of Claim Four would be made under a confirmed plan, but also provided, per the agreement between Belkova and PNC, that "[n]otwithstanding the foregoing, *the lien of PNC Bank on its collateral* shall be avoided only upon completion of the Debtor's Chapter 12 Plan payments and discharge."[17]

### c.     The Plans and the Confirmation Order

47.     On August 19, 2015, Belkova filed her Second Amended Chapter 12 Plan, in which she admitted both that she owned the Property and that PNC held a mortgage on it: "PNC Bank, National Association has the mortgage on the Debtor's farm located at 2251 Buckridge Trail, Loxahatchee, FL 33470" with a "new initial principal balance" of $320,000.[18]

48.     On September 15, 2015, PNC responded with its Objection to Confirmation of Second Amended Chapter 12 Plan, objecting to the plan because it "does not reflect the agreement of the parties as to the value of the property.  The parties agreed to a value of $325,000, not $320,000 as the Plan states."[19]  PNC further objected to the plan as proposed because "[i]f Debtor's Chapter 12 bankruptcy is dismissed or is converted to a case under any other chapter, the terms of the original Note and Mortgage will be restored."[20]

49.     On June 23, 2016, Belkova filed her Third Amended Chapter 12 Plan, in which she admitted: "PNC Bank, National Association has the mortgage on the Debtor's farm located at 2251

---

[17] *Id.,* D.E. 357 (emphasis added).
[18] *Id.*, D.E. 212 at p. 2 of 3, ¶ B(5).
[19] *Id.*, D.E. 219 at ¶ 2.
[20] *Id.,* D.E.219 at ¶ 3.

-12-

Buckridge Trail, Loxahatchee, FL 33470."[21]  She listed the "new initial principal balance" as $325,000 – consistent with the amount set forth in the Valuation Order.

50.      On February 5, 2017, Belkova filed her Fourth Amended Chapter 12 Plan, in which she admitted: "PNC Bank, National Association has the mortgage on the Debtor's farm located at 2251 Buckridge Trail, Loxahatchee, FL 33470."[22] She further stated the "new initial principal balance shall be $325,000 (which includes 5% interest and is based upon the Court's Amended Order dated October 23, 2015…)."

51.      On April 10, 2017, Belkova filed her Sixth Amended Chapter 12 Plan.  In the Sixth Amended Chapter 12 Plan, Belkova changed her position on the validity of the PNC Mortgage, but nonetheless reiterated her ownership of the Property: "PNC Bank, National Association has a purported mortgage (the Debtor does not agree that the lien is valid) on the Debtor's farm located at 2251 Buckridge Trail, Loxahatchee, FL 33470.  The new initial principal balance shall be $325,000 (which includes 5% interest and is based upon the Court's Amended Order dated October 23, 2015…)."[23]

52.      In her Sixth Amended Chapter 12 Plan, Belkova also stated: **"The Confirmation of this Plan shall have the effect of confirming that Debtor is the owner of this property located in Palm Beach County, Florida either individually or through the respective Florida Land Trust."**[24] Belkova proposed to the Court and all of her creditors, including PNC, that she, and she alone, be deemed the owner of the Property, either individually in her own name or through the Land Trust.

---

[21] *Id.*,D.E. 291 at p. 2, ¶B(5).
[22] *Id.*, D.E. 364 at p. 3, ¶ B(5).
[23] *Id.*, D.E. 383 at p. 2, ¶ B(5).
[24] *Id.*, D.E. 383 at p. 3, ¶ B(5) (emphasis added).

-13-

53.     Belkova's position in this regard was consistent with a ruling made by the Court earlier in the Chapter 12 Bankruptcy.  When considering the value of another parcel of real estate, the Court ruled that Belkova had standing because she owned the property at issue through a trust: "The Court finds that Debtor is the trustee of the Land Trust.  *Because Debtor is the Trustee of the Land Trust, she has full rights of ownership over the Real Property* and has standing to value the Real Property."[25]

54.     On May 15, 2017, the Court entered the  Confirmation Order, which confirmed the Sixth Amended Chapter 12 Plan and noted: "If there is a discrepancy between the provisions of the Plan and this Order, the provisions of this Order supersede the Plan."[26] The Confirmation Order instructed the Trustee to make full disbursements to creditors who had filed claims and were ruled by the Court as priority, secured, or unsecured as set forth on the attached Exhibit A, in the amounts set forth therein.  In addition, the Confirmation Order stated: "Secured creditors shall retain their liens." The Confirmation Order further stated that "Claim Notes listed on the attached Exhibit A are incorporated into the terms of this Order."

55.     The Confirmation Order established Belkova's sole ownership of the Property.  In dealing with the treatment of the claim of another secured creditor with a lien on the Property, the Confirmation Order states: "Deer Run Property Owners Association Inc. (Deer Run) may proceed in all respects with the pending legal action against the Debtor for alleged violation of the Declaration and related claims *concerning 2251 Buckridge Trail, Loxahatchee, FL 33470 aka Lot 122, which the Debtor owns*."[27]

---

[25] *Id.,* D.E. 215 at p. 4 of 4 (emphasis added).  Three years later, on May, 26, 2020, Belkova reiterated her sole ownership of the Property in the handwritten schedules she filed in her Chapter 12 case in the Southern District.  See U.S.B.C., S.D. Fla. Case No. 20-15112, D.E. 29 at pp. 3, 13, 16, 29, 45 and 46 of 46.
[26] Chapter 12 Bankruptcy, D.E. 393 at p. 1, ¶ 1.
[27] *Id.,* D.E. 393 at p. 6, ¶ 18 (emphasis added).

56.     Accordingly, the Confirmation Order, in conjunction with the terms of the Sixth

Amended Plan, judicially established with finality Belkova's sole ownership of the Property.

57.     The Confirmation Order also provides that the cramdown of the PNC secured claim

was contingent.  In the Claim Notes at Exhibit A to the Confirmation Order, PNC's Claim Four

was listed in two parts – the secured claim in the amount of $325,000, with notes referencing the

Valuation Order; and the unsecured claim in the amount of $433,510.40 was to be paid out at

$0.00.  The claim notes for the unsecured portion of PNC's claim references the Order Sustaining

Objection to Claim Four, and states: "Per Doc #357 No Disbursements, *However The Lien of Pnc*

*Bank Shall Be Avoided Only Upon Completion Of Payments And Discharge.*"[28]

### d.     The Mortgage Validity Adversary Proceeding

58.     Against this backdrop, Belkova initiated  adversary proceeding No. 3:18-ap-180

seeking to invalidate the PNC mortgage lien (the "**Mortgage Validity Adversary Proceeding**").

59.     More specifically, on December 14, 2018, Belkova commenced the adversary

proceeding by filing a single-count Complaint against PNC seeking a judicial determination that

(1) a Mortgage dated January 27, 2005 is invalid due to the failure to obtain the consent of the

beneficiaries to the Land Trust; and (2) PNC's claim against the Estate is discharged.[29]

60.     In her Complaint, Belkova specifically alleged that she was suing PNC "to

determine the priority and extent of a claimed lien *on property of the estate*."[30] Belkova further

alleged that the adversary proceeding arose "from the referenced Chapter 12 case" and admitted

the jurisdiction of the Court.[31]

---

[28] *Id.*, D.E. 393 at p. 8, Claim Notes 04 (emphasis added).
[29] Adv. Pro. Case No. 3:18-ap-180, D.E. 1.
[30] *Id.*, p. 1.
[31] *Id.*, ¶¶ 1-2.

61.     Belkova's Complaint also alleged, "On the Petition Date, Plaintiff was the beneficial owner of the real property and improvements located at 2251 Buck Ridge Trail, Loxahatchee, Florida…" and that "Legal title to the Property is currently held by Lilia Belkova, as successor Trustee to Land Trust Agreement No. 072003 dated February 9, 2004…"[32]

62.     PNC responded by filing an Answer, Affirmative Defenses and Counterclaim on July 2, 2019.  PNC's Counterclaim contained two counts: (a) Equitable Lien and (b) Equitable Subrogation.[33]

63.     Belkova answered the Counterclaim on August 12, 2019, in which she admitted that she held a beneficial interest in the Property as well as legal title to the Property through the Land Trust.[34]  Belkova did not claim that this Court lacked subject matter jurisdiction over the Property or the liens against the Property because it was not an asset of the estate in her Chapter 12 Bankruptcy.

64.     On March 25, 2020, this Court entered its Order on PNC Bank's Motion for Summary Judgement and, on March 26, 2020, its Final Judgment (collectively, the "**Final Judgment**"), which granted in part and denied in part PNC's Motion for Summary Judgment .[35] The Court concluded that PNC retains enforceable lien rights against the Property either through its mortgage or through equitable subrogation to the rights of the prior mortgagee which was paid with the proceeds of the PNC loan transaction.

---

[32] *Id.*, ¶¶ 10-11.
[33] *Id.*, D.E. 32.
[34] *Id.,* D.E. 42.
[35] *Id.*, D.E. 125 and 126.

e.      **The Appeal and the Discharge**

65.      On April 23, 2019, Belkova requested that the court grant her a hardship discharge.[36]  In that motion, she reiterated her sole ownership of the Property: "Debtor is the owner and operator of a horse breeding and training operation.  She owns three farms, two in the Ocala, Florida region, and one in Loxahatchee, Florida [*i.e.,* the Property]."[37]  That request was later withdrawn by Belkova.

66.      On April 7, 2020, Belkova filed a Notice of Appeal from the Final Judgment, commencing the District Court Appeal.[38]  However, it took her a few months before she ultimately filed her untimely Statement of Issues on Appeal.[39]

67.      Between the filing of the Notice of Appeal and the filing of the Statement of Issues on Appeal,  Belkova then fully performed under her Sixth Amended Chapter 12 Plan and received the Discharge Order on June 3, 2020.[40]  Only after receiving her discharge did she file her Statement of Issues on Appeal in the Mortgage Validity Adversary Proceeding, in which she asserted, for the very first time, that this Court lacked subject matter jurisdiction over the disputes with PNC because the Property was not property of the estate in the Chapter 12 Bankruptcy and because the outcome of the Adversary Proceeding could not have any effect on the bankruptcy estate.[41]  She also asserted that, since 2009, Nazarova was a co-owner of the Property as a beneficiary under the Land Trust.[42]

---

[36] Chapter 12 Bankruptcy, D.E. 455.
[37] *Id.,* at ¶ 1.
[38] Mortgage Validity Adversary Proceeding, D.E. 129.
[39] *Id.*, D.E. 144.
[40] Chapter 12 Bankruptcy, D.E. 502.
[41] Mortgage Validity Adversary Proceeding, D.E. 144.
[42] *Id.*, D.E. 144, at. 2, ¶ 4.

68.     On July 24, 2020, Belkova (as trustee for the Land Trust) and Nazarova, represented to be Belkova's mother (and a purported beneficiary of the Land Trust) filed the Motion to Intervene in the District Court Appeal (that Belkova herself had commenced).[43]

69.     In addition, Belkova (and the other Movants under the Motion to Intervene), filed the Motion to Relinquish Jurisdiction in the Appeal.[44]

70.     The Motion to Relinquish references "a declaration of Anissa Nazarova in support of [the Motion to Relinquish] and translation" (the "**Declaration**"), which merely repeats the contents of the Motion to Intervene.

71.     Belkova previously testified at her deposition taken by PNC in October 2019 in the Mortgage Validity Adversary Proceeding that her mother lived in Russia, she had never lived in the United States, she did not live at the Property, she was never able to obtain a visa to visit the United States, she did not speak English, she did not read or write English, and she did not know how to use a computer.  See Excerpt from the Deposition of Lilia Belkova [Case No. 5:20-cv-00143 – D.E. 11-4, at p. 5, li. 3 – 7, li. 5.], a true and correct copy of which is attached to D.E. 1 as Exhibit "W."

72.     Notwithstanding, Nazaroza allegedly claimed in the Declaration that she was the sole beneficiary of the Land Trust when the Mortgage was executed, and that she did not agree to the construction of the house on the Property – a house built at the direction of Belkova – because Deer Run Homeowners' Association refused to approve the construction plans.

73.     On January 13, 2021, Belkova filed her Corrected Initial Brief in the District Court Appeal, in which her first argument on appeal was that the Bankruptcy Court lacked subject matter

---

[43] District Court Appeal D.E. 8.
[44] District Court Appeal D.E. 16.

jurisdiction to impose a lien on non-estate property.[45]  Belkova repeated this argument in her

Amended Reply Brief, filed on March 18, 2021.[46]

74.    More recently, on March 26, 2021, Belkova repeated in the Mortgage Validity

Adversary Proceeding her contention that the Property was not property of her Chapter 12

Bankruptcy in Plaintiff/Counter-Defendant's Motion for Relief from Summary Judgement and

Order Under Fed. R. Bankr. P 9024 [D.E. 148] (the "**Motion for Relief from Judgment**").

However, in that same motion, Belkova admits the opposite - that the Property is "property, in

which [her Chapter 12 Bankruptcy] estate had an interest…."[47]

75.    Moreover, in the Motion for Relief from Judgment, Belkova represented to the

Court that the Construction Loan Agreement attached as Exhibit "A" thereto is "a complete copy

of Construction Loan Agreement Documents" and asked the Court to take judicial notice of same

in considering the Motion for Relief from Judgment.[48]

76.    The Construction Loan Agreement that Belkova represented to the Court is a

"complete copy" reflects, in Belkova's handwriting and in two separate places on the Agreement,

that, on January 14, 2005, Belkova was the beneficiary of Land Trust 072003.[49]

### 4.    Belkova's Bait and Switch

77.    Thus, despite her numerous filings during the course of the Chapter 12 Bankruptcy

described above, which state, unequivocally, that she alone was the owner of the Property, and

despite entry of the Valuation Order, the Order Sustaining Objection to Claim Four and the

Confirmation Order of the Sixth Amended Chapter 12 Plan by this Court, which were predicated

---

[45] District Court Appeal D.E. 44.
[46] District Court Appeal D.E. 66.
[47] Mortgage Validity Adversary Proceeding, D.E. 148 a p. 10.
[48] *Id.*, D.E. 148 n. 5.
[49] *Id.*, D.E. 148-1, pp. 24 and 31.

on her sole ownership of the Property, Belkova has since made contrary assertions in filings in the Appeal and in the Motion for Relief from Judgment, and she is actively attempting to relitigate the issue of her ownership of the Property. Had Belkova been open and transparent during her Chapter 12 Bankruptcy regarding her position on ownership of the Property, and if the Property in fact never was property of the estate as she has now alleged, then PNC would not have settled with her, and the Court would not have entered the Valuation Order, the Order Sustaining Objection to Claim Four or that portion of the Confirmation Order which relates to the Property and had the effect of cramming down the PNC *in rem* lien claim by over $430,000.

78.     Belkova has attempted to effect a bait and switch on PNC and on the Court. Belkova used the bait (her representations of full ownership of the Property and of the validity of the PNC Mortgage, and her representations that this Court had subject matter jurisdiction over the Property) to get the valuation, cramdown and confirmation rulings and, ultimately, the Chapter 12 Discharge Order. The switch (her claims of mere partial ownership of the Property as a co-beneficiary of the Land Trust, or non-ownership at the time of the Mackinac Mortgage, her attempt to undo her previous acknowledgements of the validity of the PNC Mortgage and her assertions that the Court never had jurisdiction over the Property because it was not property of the estate) was effected only after she failed to invalidate PNC's lien in the Mortgage Validity Adversary Proceeding. This constitutes the essence of the fraud perpetrated by Belkova to procure the Discharge Order in her Chapter 12 Bankruptcy.

79.     This bait and switch scheme can only succeed if the Court reverses its own rulings and/or disregards prior Orders entered in the Chapter 12 Bankruptcy and agrees with Belkova that the Court did not have subject matter jurisdiction over the Property because it was not property of the estate.

80.     However, this Court already has found that PNC holds a secured claim in the

Chapter 12 Bankruptcy with a lien on the Property: "The Court finds that PNC Bank is a secured creditor who holds a 'direct financial interest' in the outcome of the Debtor's Chapter 12 case."[50]

81.      The Property was property of the Chapter 12 Bankruptcy estate because, among other reasons, Belkova is the trustee of the Land Trust and, as such, has full rights of ownership over the Property.

## COUNT I – INJUNCTIVE RELIEF
### (Pursuant to 11 U.S.C. § 105)

82.      The allegations set forth in paragraphs 1-81 are realleged and fully incorporated herein by reference.

83.       Belkova may not collaterally attack or relitigate the orders of this Court which establish that the Property was property of the estate in the Chapter 12 Bankruptcy and that this Court had subject matter jurisdiction over the Property.

84.      All courts established by an Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. 28 U.S.C. § 1651(a); 11 U.S.C. § 105(a).  A court's power to protect its jurisdiction includes the power to enjoin a dissatisfied party bent on relitigating claims that were (or could have been) previously litigated before the court from filing in both judicial and non-judicial forums, as long as the injunction does not completely foreclose a litigant from any access to the courts.

85.      Courts have considerable discretion in designing these injunctions, including authority to impose serious restrictions on a party bringing matters without an attorney, as long as the party is not completely foreclosed from any access to the courts.

---

[50] Order on Motion to Dismiss at pp. 7-8; see also Final Judgment.  The Court will have the opportunity to reiterate its ruling, explicitly, that the Property was property of Belkova's Chapter 12 Bankruptcy estate over which it had subject matter jurisdiction, when it rules on Belkova's Motion for Relief from Judgment in the Mortgage Validity Adversary Proceeding.

86.    In determining whether a litigant's conduct is sufficient to justify entry of an injunction against her, the courts consider the following factors: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits, (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing, (3) whether the litigant is represented by counsel, (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel, (5) whether other sanctions would be adequate to protect the courts and other parties.

87.    The facts set forth in detail above meet each of the foregoing factors warranting issuance of an injunction against Belkova.  Belkova has a history of vexatious litigation against PNC over its lien on the Property; she has not had a good faith expectation of prevailing; she proceeds pro se and only occasionally is represented by counsel, and has retained, and dismissed, such counsel on multiple occasions; she has caused needless expense to PNC and has posed unnecessary burdens on the courts and their personnel; and any other sanction will not be adequate to protect PNC and the courts.

88.    PNC therefore requests that the Court enter an injunction against Belkova, and anyone acting by, through, on behalf of, or with the assistance of, or anyone who is in active concert or participation with, Belkova, enjoining and prohibiting any filing or submission in any judicial or non-judicial forum (other than the District Court Appeal and the 11th Circuit Appeal) which, in any manner, challenges or asserts a challenge to the validity of the PNC Mortgage and/or the equitable lien in favor of PNC, and/or which, in any manner, asserts that Belkova was not the owner of the Property from the time the PNC Mortgage was executed through the entry of the Discharge Order, all as established by the Valuation Order, the Order Sustaining Objection to Claim Four, the Confirmation Order and the Final Judgment, without first submitting to this Court

a request to make such filing or submission, along with a copy thereof for in chambers review, and

without receiving an order from this Court either denying the request, granting it, or scheduling

the matter for hearing, depending on the circumstances and the Court's conclusion.\

<strong><u>COUNT II – REVOKE DISCHARGE</u></strong><br><strong>(Pursuant to 11 U.S.C. § 1228(d))</strong>

89.     The allegations set forth in paragraphs 1-88 are realleged and fully incorporated

herein by reference.

90.     This Count is pled in the alternative to Count I and the injunctive relief sought by

PNC therein.

91.     As the Court noted at the hearing on Belkova's Fourth Amended Motion to Dismiss

[D.E. 23], the central question hanging over this Adversary Proceeding is:  "So it brings to mind

the question:  Was she lying then or is she lying now?"[51]  Belkova is lying now.

92.     If, and only if, the Court agrees that the Property was not property of the estate in

her Chapter 12 Bankruptcy and this Court did not have subject matter jurisdiction over the

Property, then the Court should revoke the Discharge Order because it was obtained by fraud

through the lies Belkova perpetrated during the Chapter 12 Bankruptcy.

93.     The fraudulent statements Belkova made during the Chapter 12 Bankruptcy, which

enabled her to obtain her discharge, include, without limitation, the following:

(a)     the existence of the "construction loan agreement" between the parties related to

construction on the Property (said on 12-3-13);[52]

(b)     the loan to PNC "is secured by a lien on a farm located at 2251 Buckridge Trail,

---

[51] Tr. of Hrg. held on Mar. 16, 2021, at p. 22, lines. 14-15.
[52] Belkova has since filed a "complete copy" of the Construction Loan Agreement in the Mortgage Validity Adversary Proceeding, which copy unmistakably and undeniably reflects, in Belkova's handwriting in two separate places on the Agreement, that, on January 14, 2005, Belkova was the beneficiary of Land Trust 072003. D.E. 148, n. 5; D.E. 148-1, pp. 24 and 31.

Loxahatchee, FL 33470" (said on 6-25-14);

(c)      "The name of the lienholder is PNC Bank" (said on 6-25-14);

(d)      "The type of property is real property and the description of the property is Debtor's

farm located in Palm Beach County, FL" (said on 6-25-14);

(e)      "the lien on the property in question survived the previous Chapter 7" (said on 9-

14-16);

(f)      PNC's claim, and those of two other lienholders, were "liens on the properties in

question [that] survived the previous Chapter 7 Discharge" (said on 9-14-16);

(g)      "PNC Bank, National Association has the mortgage on the Debtor's farm located

at 2251 Buckridge Trail, Loxahatchee, FL 33470" (said on 8-19-15; 6-23-16; and 2-5-17);

(h)      "…the Debtor's farm [is] located at 2251 Buckridge Trail, Loxahatchee, FL 33470"

(said on 4-10-17);

(i)      "The Confirmation of this Plan shall have the effect of confirming that Debtor is

the owner of this property located in Palm Beach County, Florida either individually or

through the respective Florida Land Trust." (said on 4-10-17);

(j)      "On the Petition Date, Plaintiff was the beneficial owner of the real property and

improvements located at 2251 Buck Ridge Trail, Loxahatchee, Florida…" (said on 12-14-

18); and

(k)      "Debtor is the owner and operator of a horse breeding and training operation.  She

owns three farms, two in the Ocala, Florida region, and one in Loxahatchee, Florida [*i.e.*,

the Property]." (said on 4-23-19).

94.      Belkova's fraud relates to statements and representations (actual or implied)

regarding her ownership of the Property and its inclusion in the Chapter 12 Bankruptcy estate that

she made variously to PNC, the Chapter 12 trustee and the Court, and engaged in conduct

consistent therewith, (1) during the negotiations concerning the value of PNC's claim, and the entry of the Valuation Order and the Order Sustaining Objection to Claim Four which, in turn, led (2) to PNC not objecting to plan confirmation (which it expressly committed not to do in the Valuation Order), which then led (3) to the entry of the Confirmation Order, which led to (4) Belkova's performance of the terms of her Sixth Amended Chapter 12 Plan, which resulted in (5) the entry of the Discharge Order.

95.     PNC relied to its detriment on Belkova's lies and misrepresentations, and her fraudulent conduct consistent therewith, and its reliance was justified.

96.     More specifically, PNC negotiated with Belkova resulting in an agreement to accept a significantly reduced value of its secured claim and an agreement to receive no payment at all for the unsecured portion of its claim.  PNC also agreed not to object to Belkova's Chapter 12 Plan as long as it contained these payment terms.  PNC held up its end of the parties' bargain.

97.     Belkova, having performed under the confirmed Plan, which was confirmed because PNC did not object to it, the Chapter 12 Discharge Order allowed Belkova to avoid more than $430,000 of PNC's *in rem* lien claim, to the financial detriment of PNC.

98.     PNC did not know of Belkova's fraud until after the Discharge Order was entered when Belkova filed the Statement of Issues on Appeal, the Motion to Intervene, the Motion to Relinquish, her briefs in the District Court Appeal, and the Motion for Relief from Judgment.

99.     The fraud perpetrated by Belkova to obtain entry of the Valuation Order, the Order Sustaining Objection to Claim Four and the Confirmation Order enabled Belkova to obtain the Discharge Order and prejudice the amount of PNC's *in rem* lien claim against the Property.

100.     Consequently, this Court should revoke the Discharge Order, in whole or in part, pursuant to 11 U.S.C § 1228(d).

## COUNT III – REVOCATION OF THE VALUATION ORDER AND THE ORDER SUSTAINING OBJECTION TO CLAIM FOUR AND AMENDMENT OF THE CONFIRMATION ORDER
### (Pursuant to 11 U.S.C § 105)

101.    The allegations set forth in paragraphs 1-100 are realleged and fully incorporated herein by reference.

102.    This Count is pled in the alternative to Count I and the injunctive relief sought by PNC therein.

103.    If, and only if, the Court agrees that the Property was not property of the estate in her Chapter 12 Bankruptcy and this Court did not have subject matter jurisdiction over the Property, then this should Court revoke both the Valuation Order and the Order Sustaining Objection to Claim Four, and should amend that portion of the Confirmation Order which limits the PNC *in rem* lien claim against the Property, because such Orders are void.

104.    Those Orders are void if, and only if, this Court lacked subject matter jurisdiction over the Property and the PNC lien thereon and was without judicial authority to limit or restrict the lien of PNC against the Property.

105.    Accordingly, if, and only if, the Court finds that Belkova's new assertions are true, then PNC is entitled to be relieved from the Valuation Order and the Order Sustaining Objection to Claim Four, and those orders should be revoked as void for lack of subject matter jurisdiction, and  PNC is entitled to be relieved from that portion of  the Confirmation Order which limits its lien claim against the Property.

106.    PNC reserves the right to further amend or supplement this Amended Complaint to include any additional information obtained through discovery in this action, or otherwise.

WHEREFORE, Plaintiff, PNC BANK, N.A., respectfully prays:

1.      that, because the Court has already determined that it had subject matter jurisdiction over the Property and the corresponding authority to modify the amount and treatment of PNC's lien claim against the Property, the Court enter an Order against Defendant, LILIA BELKOVA, and anyone acting by, through, on behalf of, or with the assistance of, or anyone who is in active concert or participation with, Belkova, enjoining and prohibiting any filing or submission in any judicial or non-judicial forum (other than the District Court Appeal and the 11th Circuit Appeal) which, in any manner, challenges or asserts a challenge to the validity of the PNC Mortgage and/or the equitable lien in favor of PNC, and/or which, in any manner, asserts that Belkova was not the owner of the Property from the time the PNC Mortgage was executed through the entry of the Discharge Order, all as established by the Valuation Order, the Order Sustaining Objection to Claim Four, the Confirmation Order and the Final Judgment, without first submitting to this Court a request to make such filing or submission along with a copy thereof for in chambers review and, if appropriate, without receipt of an order either denying the request, granting it, or scheduling the matter for hearing so that PNC can be heard on the matter, depending on the circumstances and the Court's conclusion.

2.      that if, and only if, the Court changes its determination and finds that it did not have subject matter jurisdiction over the Property and did not have the authority to modify the dollar amount and treatment of PNC's lien claim against the Property, then the Court find that Defendant, LILIA BELKOVA, obtained her Chapter 12 Discharge Order through fraud, and revoke the Discharge Order, in whole or in part;

3.      that if, and only if, the Court changes its determination and finds that it did not have subject matter jurisdiction over the Property and did not have the authority to modify the dollar amount and treatment of PNC's lien claim against the Property, then the Court revoke the

Valuation Order and the Order Sustaining Objection to Claim Four, and amend the Confirmation

Order to remove that portion of the Order which limits PNC's lien claim against the Property; and

4.      that the Court grant PNC such other and further relief as is just and proper, including

reasonable costs and attorney's fees.

Respectfully submitted, this 21st day of May, 2021.

**McGLINCHEY STAFFORD**

*/s/ Kimberly H. Israel*
Kimberly Held Israel
Florida Bar No. 47287
10407 Centurion Pkwy. N., Ste. 200
Jacksonville, FL 32256
Telephone: (904) 224-4449
Fax: (904) 485-8083
kisrael@mcglinchey.com
jpowell@mcglinchey.com

and

Rudy J. Cerone (*admitted pro hac vice*)
Louisiana Bar No. 14137
601 Poydras St., Suite 1200
New Orleans, LA 70130
Telephone: (504) 596-2786
Fax: (504) 910-9362
rcerone@mcglinchey.com
lgraff@mcglinchey.com

*Attorneys for Plaintiff, PNC BANK, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Amended Complaint of PNC BANK, N.A. for Injunctive Relief or, Alternatively, to Revoke Chapter 12 Discharge and to Revoke and Amend Prior Orders has been served, via E-mail, this **21st** day of **May, 2021**, to: **Kevin Gleason, Esq.**, bankruptcylawyer@aol.com and kgpacecmf@aol.com, *Attorney for Defendant.*

*/s/ Kimberly Held Israel*
ATTORNEY